### Louis Ruedel, Appellant, v. Chicago Ornamental Iron Company, Appellee.

#### Gen. No. 15,398.

MASTER AND SERVANT—*when former not obligated to warn.* If an injury results to a servant from a danger known to him and which was obvious, the master is under no obligation to give a warning with regard to such danger, and the servant injured in consequence cannot recover.

Action in case for personal injuries. Appeal from the Superior Court of Cook county; the Hon. OSCAR E. HEARD, Judge, presiding. Heard in this court at the March term, 1909. Affirmed. Opinion filed November 10, 1910.

MARK J. SULLIVAN, for appellant.

FRANK M. COX and R. J. FELLINGHAM, for appellee.

MR. JUSTICE BAKER delivered the opinion of the court.

This is an appeal by the plaintiff from a judgment for the defendant on a directed verdict at the close of plaintiff's case, in an action on the case for personal injuries. The ground of reversal urged is, that on the

evidence the court erred in directing a verdict for the defendant.

Plaintiff and one Leach were in the service of the defendant, a contractor for certain iron work in a large building then under construction, and set an iron window sill in an opening in a concrete wall thirty feet above the floor of the building. In doing such work they stood on a scaffold eighteen inches wide placed against the north side of the wall four feet below the bottom of the opening for the window. Directly opposite, on the south side of the wall, was an elevator shaft, in which the elevator cage or platform passed up and down every few minutes. The wall was eighteen or twenty inches thick and the sill about two feet wide. There were flanges an inch wide on the sides of the sill and it was fastened to the wall by iron screw bolts, which went through horizontally from one flange to the other. The heads of the bolts were on the south side of the wall and in them were nicks to receive the end of a screw driver, by means of which the bolts were driven into the opposite flange. Plaintiff and Leach were experienced structural iron workers. They began the work of setting the window sill the day before the day that plaintiff was injured, and worked three hours. They resumed work at eight o'clock the next morning and about nine o'clock had the sill bolted to the wall. As it was set the space between the elevator cage and the sill, as the cage passed the sill, was four or five inches. Iron bars projected beyond the edge of the cage three or four inches, so that the clearance between such bars and the window sill was only about one inch. About nine o'clock Clark, the defendant's superintendent or foreman, came on the scaffold and told plaintiff and Leach that the sill was too close to the elevator, and they must move it. Plaintiff's testimony as to what occurred while Clark was on the scaffold was in part as follows: Asked how close the sill was to the elevator when it passed by, he answered; "I don't

know exactly, I can't tell you. Q. About an inch? A. May be a half an inch or an inch; I don't know. Q. Did the elevator go up and down while Mr. Clark was there at that time? A. Yes, sir. Q. You and Mr. Clark talked about how close the sill was to the elevator when it passed by? A. He talked about it. Q. And so did you? A. Yes, sir. Q. And when the elevator passed by there you and Mr. Clark noticed how close that elevator came to that window sill? A. I think so. * * * He looked at it, he looked it over. Q. And so did you? A. Yes." Plaintiff testified that when Clark gave the order to move the sill: "I said it is a dangerous place here to work. Well, he said, never mind; do the work and I watched the elevator; something like that; I don't know any more; so I had to watch on one side, say it from fifth floor down, and watch the other side, both sides, we have to watch them." On cross-examination he was asked: "Did you not tell Clark that the work was dangerous because the elevator was going by there every few minutes? A. Runs up and down. Q. You told him that? A. Yes, sir. Q. That was what made it dangerous? A. Yes, sir." Clark then went away and from that time until the accident no one other than plaintiff and Leach were present or had anything to do with the work or with watching for the elevator. They proceeded to take out the screw bolts by which the sill was fastened to the wall, plaintiff using a screw driver eight inches long. In doing so they stood on the scaffold on the north side of the wall and reached over the top of the wall, as they had done in putting in the bolts. The holes for the bolts were within less than an inch of the top of the sill and between the man who was putting in or taking out a bolt, and the elevator as it passed up and down was only the width of the sill, about twenty-four inches, and the top of the wall was about on a level with his breast. As the bolts were horizontal and their heads but four or five inches from the edge of the elevator cage as it passed by the sill,

it is clear that to unscrew a bolt with a screw driver eight inches long, the hand must necessarily be in a position where, if it was not removed as the elevator passed up or down, it must come in contact with the cage proper, excluding the projecting bars. When plaintiff was taking out the last bolt the cage came down, struck his hand and inflicted the injuries complained of.

There is but one count in the declaration. It states the facts as to plaintiff's employment and the work in which he was engaged; alleges that the bars attached to the elevator cage passed within a quarter of an inch of the edge of the window sill; that it was for that reason dangerous to work on said sill; that plaintiff did not know the danger nor know that said bars were attached to the elevator cage; that defendant knew, or by the use of reasonable care would have known, of the danger, but negligently, etc., compelled plaintiff to stand on said scaffold and remove said sill, and failed to warn him of the approach or movement of the elevator, by reason whereof, while plaintiff was, with due care for his safety, unscrewing certain bolts in said sill close to the elevator shaft with a screw driver, the elevator cage came down, without notice or warning to the plaintiff, and the bars or legs thereof struck plaintiff's hand and injured it, etc.

There was no change in plaintiff's surroundings after the order to move the sill was given. He and Leach had put in the bolts with screw drivers and took them out in the same manner. The only danger in such work was that if the man engaged in putting in or taking out a bolt, the head of which was on the south side of the wall, failed to remove his hand as an elevator passed up or down, the elevator would strike his hand and injure it. This danger was known to plaintiff and the defendant was not negligent in failing to warn him of such obvious and known danger. If plaintiff had not noticed the bars extending from the elevator, he knew that the clearance between the edge of the

cage and the sill, excluding the bars, was only four or five inches. He was unscrewing a horizontal bolt with a screw driver eight inches long and in doing so his hand must necessarily be so far from the head of the bolt as to bring it within the space occupied by the cage, excluding the bars.

There is in the declaration no allegation that the defendant promised plaintiff to watch the elevator or give him warning of its approach. Nor could the jury from the evidence properly find that Clark promised plaintiff and Leach that he, or any one for the defendant, would watch for the elevator and give them warning of its approach. Plaintiff and Leach worked an hour according to plaintiff's testimony, or half an hour according to the testimony of Leach, after the order to move the sill was given, the elevator passing up and down every few minutes, without receiving any warning from any third person of the approach of the elevator. Plaintiff's testimony that, "I had to watch one side, say it from the fifth floor down and watch the other side, both sides we have to watch them," means that he and Leach had to watch for the approach of the elevator in both directions.

Our conclusion, on a careful examination of the evidence is, that taking the testimony most favorable to the plaintiff as true and drawing therefrom the inferences most favorable to the plaintiff that can properly be drawn therefrom, the evidence fails to show any right of recovery in the plaintiff, and the court therefore properly directed a verdict for the defendant.

The judgment will be affirmed.

*Affirmed.*